UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN CARMINUCCI, et al.,

                                    Plaintiffs,                              18 CV 2936 (LMS)

                - against -
                                                                      DECISION AND ORDER
SAL PENNELLE, et al.,

                                    Defendants.

LISA MARGARET SMITH, U.S.M.J.[1]

        Plaintiffs John Carminucci and Tin Can Holdings, LLC ("Plaintiffs") commenced this

action by filing a complaint dated April 3, 2018, in the United States Court for the Southern

District of New York.  Complaint, ECF No. 1.  Plaintiffs' Complaint included three claims:[2] (1)

First Amendment retaliation pursuant to 42 U.S.C. § 1983; (2) violation of the Equal Protection

Clause based on selective enforcement pursuant to 42 U.S.C. § 1983; and (3) an as-applied First

Amendment challenge to the Town's sign regulation pursuant to 42 U.S.C. § 1983.  Id.

Defendants Sal Pennell, Beau P. DeSimone, and Town of Mount Pleasant ("Defendants") filed

their Answer on May 30, 2018.  Answer, ECF No. 19.  Defendants have filed a motion for

summary judgment.  Mot. Summ. J., ECF No. 44.  For the following reasons, the motion is

**granted in part and denied in part**.

---

[1] The parties have consented to the undersigned's exercise of jurisdiction over this matter
pursuant to 28 U.S.C. § 636(c).  Consent Order, ECF No. 27.  "ECF" is an abbreviation for
"Electronic Court Filing."  Throughout the Court's Decision and Order, all filings in this matter
will be referred to by the document's assigned ECF number.
[2] Although the Complaint contains four separate causes of action, the Court finds that Plaintiffs'
third cause of action restated the previously stated claims.  See infra note 45.  Therefore, the
Court analyzed the third cause of action along with the substantially similar claims.  Id.

I.      **BACKGROUND**[3]

Plaintiff Carminucci is the principal of Tin Can Holdings, LLC, which owns the property

located at 989 Broadway ("the property") in the Town of Mount Pleasant.  See Pltfs.' Reply to

Defs.' R. 56.1 Statement and Counterstatement, ECF No. 52, pt. 2, ¶ 1.[4]  Since 2011, Plaintiff

Carminucci has organized slates of candidates to run for positions within the Republican Town

Committee to oppose officials loyal to both the Town Supervisor and Town Board members.  Id.

¶¶ 134-35.  Plaintiff Carminucci claims to have repeatedly confronted local elected officials at

Town Board meetings with evidence of nepotism, accepting campaign contributions from

persons and entities attempting to develop properties in the Town, and fraudulent petition-

gathering practices.  See id. ¶¶ 137-38.

Defendant Town of Mount Pleasant ("Town") is a municipal corporation governed by a

Town Board.  See id. ¶ 4.  At all relevant times Defendant Pennelle served as the Building

Inspector, and Defendant DeSimone[5] served as the Assistant Building Inspector, for Defendant

Town, unless otherwise noted.  Id. ¶¶ 2-3.  Defendant DeSimone reported to Defendant

---

[3] The facts set forth herein "are either undisputed or described in the light most favorable to the
Plaintiff, the non-moving party."  Castro v. Target Corp., No. 14 Civ. 526 (WFK) (LB), 2015
WL 1476863, *1 (E.D.N.Y. Mar. 31, 2015) (citing Capobianco v. City of New York, 422 F.3d
47, 50 n.1 (2d Cir. 2005)).
[4] ECF No. 52 includes both Defendant's 56.1 statement, Plaintiffs' response to Defendants' 56.1
statement, and Plaintiff's 56.1 counterstatement.  Since the paragraph numbers restart with
Plaintiffs' 56.1 counterstatement, the Court cites to this document in two separate parts: Part 1
incorporates Defendants' 56.1 statement and Plaintiffs' response to Defendants' 56.1 statement
(paragraphs 1-62), and Part 2 refers only to Plaintiffs' 56.1 counterstatement (paragraphs 1-209).
[5] When Defendant DeSimone was hired in 2006, he was not a certified building inspector.  ECF
No. 52, pt. 2, ¶ 190.  He did receive training later that year and had annual training between 2006
and 2015.  Id. ¶ 191.  At no time before or during his employment was Defendant DeSimone
trained in enforcing sign laws.  Id. ¶ 192.

Pennelle,[6] who in turn reported to the Town Supervisor.  See id. ¶¶ 5, 125, 186.  Among their many roles, Defendants Pennelle and DeSimone enforced the Town Code.  See id. ¶ 124.

### A.  Description of the Property

Plaintiff Carminucci purchased the property in 2002 and has since used it to operate an automotive repair garage.  ECF No. 52, pt. 1, ¶¶ 4, 12.  At the time of purchase, Plaintiffs submitted a detailed survey to the Building Department.  ECF No. 52, pt. 2, ¶ 9.  The Building Department subsequently certified the survey, noting that the property consisted of "[a] legal, non-conforming, one story, automotive repair shop, legal two-story two-family dwelling, one car garage (detached)," and that there were "no known violations on record for the premises." Id. ¶¶ 9, 19.

The property is an M-2 zone which designates "light industrial" properties, id. ¶ 8, and it is located on the corner of Broadway and Garrigan Avenue adjacent to residential homes on both sides.  ECF No. 52, pt. 1, ¶¶ 2-3.  At various times relevant herein, Plaintiff Carminucci stored

---

[6] Defendants DeSimone and Pennelle met daily to review assignments.  ECF No. 52, pt. 2, ¶ 187. There is a discrepancy in the deposition testimony as to the degree to which Defendant Pennelle supervised Defendant DeSimone.  Defendant DeSimone testified that he could send out violation notices to property owners without obtaining supervisory approval, whereas Defendant Pennelle testified that he required subordinates to submit violation notices for his review and approval before publication.  Id. ¶¶ 188-89.

vehicles[7] and a boat[8] on the property, and portions of the wooden fencing around the property had fallen down.  Id. ¶¶ 12, 17, 19.  Plaintiffs also rent a portion of the property to other businesses to store trucks.  Defs.' Ex. H, at 382:21-387:21.

The area between the repair garage, Broadway, and Garrigan Avenue is paved with concrete.[9]  See ECF No. 52, pt. 1, ¶ 5; ECF No. 49 ¶ 53.5.  The parties disagree on whether there are marked spaces on the paved property.  ECF No. 52, pt. 1, ¶ 13.  Other than a small, raised concrete, sidewalk-like area near the intersection of Broadway and Garrigan Avenue, there is nothing separating the paved portion of the property from the paved streets.  Id. ¶ 6.  At its closest point, the repair garage is set back 8.26 feet from Garrigan Avenue and 31.86 feet from Broadway.  Id. ¶ 20.  Thus, when Plaintiffs park vehicles on the Garrigan Avenue side, there is essentially no setback between vehicles and the roadway.[10]  Id. ¶ 21.  The parties disagree as to how much space is available between Broadway and the parked vehicles.[11]  Id. ¶ 22.

---

[7] Plaintiffs argue that Defendants failed to adequately support the assertion that Plaintiffs stored a large number of vehicles on the property, and that Plaintiffs stored the vehicles and the boat for long durations of time, but Plaintiffs do not contest that the property was used to store vehicles and the boat.  ECF No. 52, pt. 1, ¶ 12, 18.  Defendants also note that Plaintiff Carminucci described some of the vehicles that he stored on the property as "wrecks."  See id. ¶ 14.  Defendants interpret "wrecks" to mean that the vehicles are not being serviced or are used to store parts.  Id.  But Plaintiffs clarify that "wrecks" describes vehicles brought in from accidents that are either to be restored or transported to another shop for repair.  Id.  Furthermore, Defendants describe some of these vehicles as being physically rusted; Plaintiffs only admit that one vehicle is physically rusted.  Id. ¶ 15.

[8] Plaintiff Carminucci described the nineteen-foot boat as being in good condition and located in a fenced area that is not visible from the roadway.  ECF No. 52, pt. 2, ¶ 17.

[9] Plaintiffs contest that the area behind the repair shop is, and has always been, used to store vehicles, but Plaintiffs' citation to the record does not support this assertion.  ECF No. 52, pt. 1, ¶ 4 (citing Defs.' Ex. B, at 2).  All references to Defendants' exhibits are to exhibits that were submitted as part of Declaration of Kenneth E. Pitcoff, ECF No. 46.

[10] Plaintiffs allege that there are no records of enforcement actions against this parking pattern on Garrigan Avenue, ECF No. 52, pt. 2, ¶ 12, but make no such claim as to Broadway.

[11] Defendants describe there being "minimal space" between the vehicles and the roadway, while Plaintiffs argue there is "substantial distance."  ECF No. 52, pt. 1, ¶ 22.  Plaintiffs also suggest

B. **Relevant Town Code Provisions**

Defendants submit that the property is governed by Chapter 218 of the Town Code ("the Zoning Ordinance") which regulates certain property uses.  Id ¶ 42.  Specifically, § 218-86 ("the Setback Law")[12] prohibits parking in any front yard unless granted a waiver by the Planning Board.  Id. ¶ 26.  Also relevant to this matter is § 218-23 ("the Special Use Permit Requirement") which requires that special use permit applications be submitted to the Zoning Board of Appeals ("ZBA") except where the Planning Board or Town Board is otherwise designated.  Id. ¶ 44.  Under § 218-33(H), special use permits shall be conditionally issued to motor vehicle repair garages for fifteen-year periods.[13]  Defs.' Ex. R, at 3-4.  Furthermore, § 218-22 ("the Site Plan Requirement") requires that any special use permit application be accompanied by a site plan showing "the location of all buildings, parking areas, traffic access and circulation drives, open spaces, landscaping, topography, special features and any other pertinent information…."  Id. ¶ 45.

---

that they do not routinely store vehicles in this area, but rather their customers park there and Plaintiffs move the vehicles elsewhere to service the vehicles.  See ECF No. 52, pt. 2, ¶¶ 115-16.
[12] The Setback Law provides that:

> It is the intention of this chapter that all structures and land uses be provided with a sufficient amount of off-street motor vehicle parking to meet the needs of persons employed at or making use of such structures or land uses and sufficient off-street loading and unloading facilities to meet the needs of such structures or land uses, properly paved, drained and lighted. At least 5% of the parking area shall be suitably landscaped. No part of the parking area shall exist in any required front, side or rear yards unless the Planning Board shall grant a waiver therefor upon a finding that such use will not unduly interfere with traffic safety in the public street and safe access and egress to parking spaces, and that such use will not detract from the compatibility of the use with uses in or on abutting districts or properties, in which event the Planning Board shall grant a waiver for a parking area not in excess of 50% of the required yard depth.

Defs.' Ex. M, at 1.
[13] Although § 218-33 of the Zoning Ordinance applies to gasoline filling stations, § 218-34 of the Zoning Ordinance states that motor vehicle repair garages are subject to the same standards and requirements applicable to gasoline filing stations with a few exceptions not relevant to this matter.  Defs.' Ex. R, at 5-6.

Plaintiffs argue that the property is not subject to any of these standards because the property is grandfathered.  Id. ¶¶ 42-45.  Pursuant to § 218-88(A), "[s]tructures and land uses in existence … at the time of the adoption of this chapter shall not be subject to the parking or loading space requirements of this chapter…."  Defs.' Ex. M, at 1-2.  The Town Code was enacted in 1958, see, e.g., Pltfs.' Ex. 67, at 1,[14] and there is no dispute that the repair garage had been present on the property prior to the enactment of the Town Code.[15]  ECF No. 52, pt. 1, ¶ 8.

Additionally, the property is subject to Chapter 162 ("the Property Maintenance Law") of the Town Code which regulates the construction and maintenance of property, id. ¶ 54, and Chapter 176 of the Town Code ("the Sign Law") which regulates property signs.  See Affirmation of Michael H. Sussman, ECF No. 51, Ex. 3.

### C. __History of the Property's Ownership__

Prior to Plaintiff Carminucci purchasing the property, Walter Koch and Merge Essig operated a gas station and a motor vehicle repair shop on the property.  ECF No. 52, pt. 1, ¶ 7.  A gas station and repair garage were in existence on the property at the time that the Town Code was enacted, and therefore were both considered a legal, non-conforming uses.  See id. ¶ 8.  The gas pumps were located on the paved area between Broadway and the repair garage.  Id. ¶ 11.

---

[14] All references to Plaintiffs' exhibits are to exhibits that were submitted as part of Aff. of John Carminucci, ECF No. 49.

[15] Defendant Pennelle acknowledged in his June 2015 deposition testimony that the repair garage is grandfathered from the Setback Law because it was built before the Town Code went into effect.  ECF No. 52, pt. 2, ¶ 14.  Additionally, Defendant Pennelle testified that parking was an accessory to the legal, non-conforming repair garage.  See Pltfs.' Ex. 62, at 119:4-121:9.  However, in March 2019, Defendant Pennelle claimed to have never been aware whether the property had ever been grandfathered in any way.  ECF No. 52, pt. 2, ¶ 15.  Nevertheless, Defendant Pennelle did admit in March 2019 that if the repair garage was grandfathered, then the property would not need site plan approval.  Id. ¶ 17.

Plaintiffs claim that the predecessors-in-title parked vehicles on both the Garrigan Avenue and Broadway sides of the repair garage.  ECF No. 52, pt. 2, ¶¶ 11, 19.

On October 13, 1994, Mr. Koch appeared with counsel before the ZBA to apply to reinstate a special use permit for his motor vehicle repair shop.  See ECF No. 52, pt. 1, ¶ 9; Defs.' Ex. B, at 1.  During the hearing, counsel explained that Mr. Koch had discontinued the commercial gas station and removed all of the gas tanks except for a single tank meant for personal use.[16]  ECF No. 52, pt. 1, ¶ 9.  The ZBA approved the special use permit application,[17] and informed Mr. Koch that the permit was good for fifteen years and subject to the Town Code. See id. ¶¶ 46-47; see also Pltfs.' Ex. 67, at 1-2 (providing a copy of the special use permit).

After Plaintiff Carminucci purchased the property in 2002, he submitted a document labeled "site plan" to the Building Department as part of a building permit application.  See ECF No. 52, pt. 1 ¶¶ 12, 45, 47-49.[18]  Defendants argue that this document was not submitted in conjunction with a special use permit to the ZBA, and therefore is not a site plan under the Site Plan Requirement.  Id. ¶ 49.  Plaintiffs respond that it was then-Building Inspector John Cuilla's job to bring the property into compliance with any required code provisions, and Mr. Cuilla did not advise Plaintiffs that they needed site plan approval from the ZBA or a special use permit. See id.  Furthermore, Plaintiffs do not actually adhere to the parking arrangement depicted in this

---

[16] Plaintiffs estimate that the gas station was terminated in 1988.  ECF No. 52, pt. 1, ¶ 7.
[17] The parties disagree as to the authority of this special use permit.  Defendants argue that it permitted the predecessors-in-title to continue operating their repair garage on the property, whereas Plaintiffs claim that the permit in no way affected the repair garage because the predecessors-in-title retained a grandfathered non-conforming use with respect to the repair garage.  See ECF No. 52, pt. 1, ¶ 10.
[18] Plaintiffs state that the site plan has been on file with the Building Department since 2002. ECF No. 52, pt. 2, ¶ 144.  In reviewing the actual site plan, a Building Department stamp indicates that the Building Department received the site plan on November 8, 2004.  Pltfs.' Ex. 66, at 2.

document which shows vehicles parked along Broadway and between the repair garage and

Broadway, and no parking between the repair garage and Garrigan Avenue.  Id. ¶ 50.

### D.  Previous Town Code Litigation

Prior to the instant matter, Defendant Town inspected the property in response to several

complaints.  See Defs.' Ex. N, at 5-6, 13, 27, 49.  These inspections resulted in several violation

notices and arrests.  Pltfs.' Exs. 2-4.  On a few occasions, New York State courts have addressed

zoning issues pertaining to the property.

In 2004, the Mount Pleasant Town Court convicted Plaintiff Tin Can Holdings, LLC, of

violating three Town Code provisions pertaining to zoning.  ECF No. 52, pt. 1, ¶ 25.

During or before March 2008, Plaintiff Carminucci petitioned the Westchester County

Supreme Court to review the ZBA's determination as to whether the Setback Law applied to the

property.  Id. ¶ 27.  Plaintiff Carminucci argued that it did not apply because the property was

grandfathered.  Id.  The Court found that the predecessors-in-title had used the front yard along

Broadway for a commercial gas pump.  See Defs.' Ex. C, at 4.  When the predecessors-in-title

removed the gas pump, the predecessors-in-title effectively abandoned the grandfathered non-

conforming use with respect to the gas pump and subjected the front yard along Broadway to the

Setback Law.[19]  See id.  In 2019, Plaintiff Carminucci admitted that he continued to park

---

[19] In describing the Court's ruling, Defendants suggest that the Court subjected the whole
property to the Setback Law.  ECF No. 52, pt. 1, ¶ 27.  In 2016, the Court clarified that the
property had operated as an auto repair business for over eighty years, and therefore "the use of
the property along Garrigan Avenue is a legal non-conforming use, not subject to the parking
requirements of [the Setback Law]."  Pltfs.' Ex. 64, at 10.  Portions of Plaintiffs' Exhibit 64 are
illegible. To download a readable version of this document, please follow these steps: (1) visit
https://iapps.courts.state.ny.us/webcivil/FCASSearch, enter the Index Number "58420/2014;" (2)
click "Find Cases;" (3) click the hyperlink of the same Index Number; (4) click "Show eFiled
Documents;" and (5) click "DECISION + ORDER ON MOTION" related to Document Number
97.

vehicles in the setback even though this ruling subjected him to the Setback Law on Broadway.
See Defs.' Ex. H, at 537:14-538:16

On March 21, 2011, Town Supervisor Joan Maybury filed a complaint[20] with the
Building Department about the property, alleging violations of the property maintenance
requirements and the Setback Law.[21]  See ECF No. 52, pt. 2, ¶ 126.  Soon thereafter, Plaintiffs
were charged with several Town Code violations, including property maintenance and Setback
Law violations.  ECF No. 52, pt. 1, ¶ 28.  In response to these charges, Plaintiff Carminucci
stipulated to several conditions, including a commitment to improving the property's aesthetic,
installing plants or planters around the in-ground pumps in front of the building to prevent
vehicles from making improper turns, and to refrain from parking vehicles on Garrigan
Avenue.[22]  Id.  On June 30, 2011, Defendant Town declared in open court that Plaintiff
Carminucci was in compliance with these conditions and agreed to permit Plaintiff Carminucci
to plead guilty for violating one count of the Setback Law.  Id. ¶ 29.  The Court accepted this
plea and imposed a fine with a one-year conditional discharge.  Id. ¶ 30.  The parties disagree as
to whether Plaintiffs continued to comply with this agreement.  Id. ¶ 31.[23]

---

[20] Defendant Pennelle testified that it was uncommon for the Town Supervisor to file complaints
with the Building Department.  Defs.' Ex. 62, at 85:8-87:23.  Furthermore, Plaintiffs challenge
whether Town Supervisor Maybury filed a bona fide complaint because it did not comply with
the Town's policy.  ECF No. 52, pt. 2, ¶ 127.  Defendant Pennelle testified that he is aware of
this policy and what is required to establish a bona fide complaint.  ECF No. 52, pt. 2, ¶ 178.
Nevertheless, Plaintiffs' Complaint does not present this as an issue, and therefore the Court does
not address this in its analysis.
[21] Defendant Pennelle testified that he discussed the vehicles on the property with Town
Supervisor Maybury and that she directed him to investigate the property.  Defs.' Ex. 62, at 91:4-
18, 129:6-28.
[22] Plaintiffs note that they have not parked vehicles on Garrigan Avenue since entering into this
agreement.  ECF No. 52, pt. 1, ¶ 28.
[23] Defendants allege that Plaintiff Carminucci returned to parking vehicles on Garrigan Avenue
and that no planter was installed, to which Plaintiffs respond that Defendants' cited material does
not support this assertion.  ECF No. 52, pt. 1, ¶ 31.

On May 21, 2014, Defendant Town initiated an action against Plaintiff Tin Can Holdings, LLC in Westchester County Supreme Court to enforce the Setback Law.[24]  Pltfs.' Ex. 5.  In response, Plaintiff filed a counterclaim alleging selective enforcement.[25]  Pltfs.' Ex. 61, at 6-7.  In resolving cross-motions for summary judgment, the Court granted Defendant Town's motion enjoining Plaintiff Tin Can Holdings, LLC from parking vehicles in the setback along Broadway, but denied the same motion in all other respects.  Pltfs.' Ex. 64, at 12.  Additionally, the Court

---

[24] Notably, Plaintiffs describe a Freedom of Information Law (FOIL) request made in response to this litigation.  ECF No. 52, pt. 2, ¶¶ 23-25.  The FOIL request sought to determine whether Defendant Town had initiated similar setback enforcement actions against other properties since May 9, 2005.  See id. ¶ 24.  Plaintiffs state that Defendant Town confirmed that no such other enforcement action had ever been taken, citing to Plaintiff Carminucci's affidavit to support this assertion.  Id. ¶ 25 (citing ECF No. 49 ¶ 17).  Plaintiff Carminucci's affidavit then cites to Plaintiffs' Exhibit 7, but Plaintiffs never attached Exhibit 7 to its affidavit.  Plaintiffs later realized their error and moved for leave to file, among other things, the document relevant to this assertion.  See Letter Mot. For Leave to File Exs., ECF No. 53, at 1.  Even though the Court granted Plaintiffs' motion, Order, ECF No. 54, Plaintiffs did not file the referenced document.  Rather than attaching a letter addressing the relevant FOIL request, Plaintiffs attached a letter from 2012 concerning a Building Department investigation into Plaintiffs' complaints alleging that several properties were in violation of the Setback Law.  See id. at 2-3.  Plaintiffs had already submitted this document twice to the Court as part of Plaintiff Carminucci's affidavit.  Compare id. at 3, with Pltfs.' Exs. 26, 58-A.  Since the parties have not submitted the relevant documents for the Court to review, the Court does not consider any argument related to this issue.

[25] Prior to this litigation, Plaintiff Carminucci and Mr. Frank Morganthaler, a licensed investigator hired by Plaintiff Carminucci, filed several complaints with the Building Department alleging that various properties were in violation of the Setback Law.  ECF No. 52, pt. 1, ¶ 32.  Defendants claim that these complaints are based solely on a visual inspection of the property, but Plaintiffs argue that the complaints are based on a combination of visual inspection and the Building Department's records for each of these properties.  Id. ¶ 33; see also ECF 52, pt. 2, ¶¶ 27, 33-34, 39, 48-49, 52, 69-70, 83, 91-92, 106, 182 (describing Plaintiff Carminucci's personal search and review of the Building Department's records concerning these properties).  During a deposition pertaining to the 2014 litigation, Defendant Pennelle testified that the Building Department investigated Plaintiff Carminucci's and Mr. Morganthaler's complaints against forty properties for parking in the setback and determined—by reviewing internal records—that none were in violation.  See Pltfs.' Ex. 62, at 97:2-102:7.  Defendant Pennelle would later testify that he did not know whether some of these properties had a legal basis for parking in the setback.  ECF No. 52, pt. 1, ¶ 35.  This review was also the subject of Defendant DeSimone's 2019 affidavit.  See infra text accompanying notes 30-32 (providing more details on this subject in the context of the instant matter).

granted Plaintiff's motion solely to the extent of dismissing the claims with respect to Garrigan Avenue and directed that a hearing be held on the selective enforcement claim, but denied the same motion in all other respects.  Id.  No such hearing was held because the parties settled this litigation with no adjudication or admission regarding the setback enforcement issue.  ECF No. 49 ¶ 29.

### E.  The 2015 Zoning Violations

On May 15, 2015, Mr. Peter Arrichiello, Plaintiff Carminucci's neighbor on Broadway, registered a complaint[26] concerning the property's condition.[27]  ECF No. 52, pt. 1, ¶ 38.  Mr. Arrichiello described the fence separating the two properties as being in "serious disrepair," allowing Plaintiffs' customers and a neighboring dog to go onto Mr. Arrichiello's property without permission.  See id.; Defs.' Ex. F, at 1.

Defendant Pennelle subsequently inspected the property and observed Town Code violations.  ECF No. 52, pt. 1, ¶ 40.  Defendant Pennelle observed "numerous abandoned vehicles, overgrown brush and leaves, broken fencing, weeds, abandoned storage containers, an abandoned boat and abandoned tarp," as well as "the parking of vehicles in the front yards of the Property"  in violation of the Setback Law.[28]  See id.; Defs.' Ex. P, at 1.

---

[26] Plaintiffs again challenge whether this qualifies as a bona fide complaint under the Town's policy, ECF No. 52, pt. 1, ¶ 35, but this is not an issue before this Court. See supra note 20.
[27] Defendants assert that Plaintiffs' "neighbors" complained about the property, ECF No. 52, pt. 1, ¶ 23, but Defendants offer no evidence to support this assertion.  Defendant Pennelle testified that the Building Department received anonymous complaints about the property, but admitted that he did not know who authored them and that the complaints did not specify that they were submitted by a neighbor.  Defs.' Ex. E, at 80:3-14.  Furthermore, the parties did not submit any exhibits to corroborate this assertion.
[28] Plaintiffs take issue with this description, arguing that Defendant Pennelle failed to explain where he observed these things, the extent that any of these items were present, and the extent to which any of this was in public view.  ECF No. 52, pt. 2, ¶ 173.

On June 26, 2015, Defendant Pennelle issued an Order to Remedy to Plaintiff

Carminucci citing four Town Code violations: (1) failure to maintain property under the Property

Maintenance Law;[29] (2) operating a junk yard without a site plan approval under the Site Plan

Requirement, (3) operating a junk yard without a special use permit under the Special Use Permit

Requirement; and (4) parking vehicles in the setback under the Setback Law.  See id.; Defs.' Ex.

P, at 1.  The Order instructed Plaintiff to remedy the stated violations within ten days.  Id.

Plaintiffs maintain that, at the time of service, they did not need a special use permit because the

property was grandfathered, they already had a site plan on record with the Building Department,

and they maintained the property in a manner consistent with an automotive repair garage.  ECF

No. 52, pt. 2, ¶¶ 144.

On July 30, 2015, after Plaintiff Carminucci failed to remedy these violations for over a

month, Defendant Pennelle filed an Information on behalf of Defendant Town against Plaintiff

Tin Can Holdings, LLC which charged the aforementioned Town Code provisions.  See ECF

No. 52, pt. 1, ¶ 41.

Plaintiffs argue that Defendants selectively enforced these Town Code provisions.  ECF

No. 1 ¶¶ 13, 27, 38-40, 42-43.  As part of the claim, Plaintiffs point to nine properties[30] which

Plaintiffs argue are similarly situated to their property, but that are not subjected to similar

enforcement.  Id. ¶ 15.  In 2019, Defendant DeSimone swore in an affidavit that he reviewed the

Building Department's records for these nine properties in 2012 and determined that parking

within the setback on each of these properties was legal either because (1) the property was not

---

[29] Defendant Pennelle would later issue a court filing specifying that the property was in
violation of Town Code § 162-4(A)(3)-(4), (6)-(7), (9).  Defs.' Ex. Q, at 1.  For a detailed
summary of these regulations, see infra Part II.B.1.a.i.

[30] For more detail about each of these properties from Plaintiffs' perspective, see ECF No. 52, pt.
2, ¶¶ 26, 30-32, 36, 41-44, 58-68, 72-76, 78-79, 82, 84-88, 93, 95-97, 99-101, 106.

subject to the Setback Law, (2) the parking was pursuant to a ZBA-approved site plan,[31] or (3) the property was grandfathered because it predated the Setback Law.  ECF No. 52, pt. 1, ¶¶ 34-35.  Defendant DeSimone does not attach any documents to support the affidavit.  ECF No. 52, pt. 2, ¶ 181.  Plaintiffs challenge Defendant DeSimone's affidavit, arguing that that their review of the same Building Department records yielded no supportive documents.  ECF No. 52, pt. 1, ¶¶ 34-36.[32]

Plaintiffs also take issue with Defendants' representation about special use permit renewals pertaining to several nearby properties.  In 2010, Defendant Town sent letters to six local gasoline stations requesting that each renew their expired special use permits within ten days or be subject to enforcement action.  Id. ¶ 51-52.  Defendants submit that each of these gasoline stations subsequently renewed their permit.[33]  Id. ¶ 53.  Plaintiffs again respond that their review of the Building Department's records revealed no such letters, and Plaintiffs

---

[31] Defendant DeSimone's affidavit states that one property was granted a special use permit in exchange for the owner making specific concessions on limiting on-site parking.  Defs.' Ex. L ¶ 9.

[32] Plaintiffs rarely inform the Court as to when Plaintiff Carminucci or Mr. Morganthaler reviewed these files, and when they do these periods are oftentimes years before this litigation began.  See ECF 52, pt. 2, ¶ 27, 33-34, 39, 48-49, 52, 69-70, 83, 91-92, 106, 182.  Furthermore, Plaintiffs' counsel submitted an affirmation alleging that Defendants never produced any site plan approvals or special use permits granted to comparator properties during the course of discovery.  ECF No. 51, ¶ 4.  In response, Defendants' counsel submitted a copy of the cover letter that was initially sent to Plaintiffs as part of Defendants' Rule 26(a) initial disclosure.  ECF No. 56, Ex. A.  This cover letter includes a list of the Building Department files that were sent to Plaintiffs, id., and Defendants allege that Plaintiffs failed to serve any Rule 34 document demands on Defendants during discovery.  Id. ¶ 4.  No such building department files have been included in any of the submissions on this motion.

[33] Plaintiffs challenge whether any of these properties timely complied.  ECF No. 52, pt. 1, ¶¶ 52-53.

question their authenticity as none of the letters are signed.[34]  ECF No. 52, pt. 2, ¶¶ 164-65, 184.

Furthermore, Plaintiffs allege that they never received a similar letter.  ECF No. 52, pt. 1, ¶ 51.

### F.  The 2015 Sign Law Violations

During or before March 2015, Plaintiff Carminucci erected a sign—approximately four

feet by eight feet—on the back of a flatbed truck which was parked on the property.  Id. ¶ 55.

The sign expressed opposition to the local school budget vote.[35]  Id.  Defendant Town received

several[36] complaints about the sign.[37]  Id. ¶ 56.

Defendant Pennelle instructed Defendant DeSimone to inspect the sign.  ECF No. 52, pt.

2, ¶ 193.  Upon inspection, Defendant DeSimone observed the sign[38] and advised Plaintiff

Carminucci that he needed a permit to erect this sign under the Sign Law.[39]  See ECF No. 52, pt.

1, ¶ 57.  Plaintiff Carminucci informed Defendant DeSimone that he would not obtain the permit.

See id. ¶ 58.  Defendant DeSimone reported this to Defendant Pennelle who then instructed

Defendant DeSimone to issue a Notice of Violation.[40]  ECF No. 52, pt. 2, ¶¶ 201-02.  Defendant

---

[34] For a detailed review of each of these letters from Plaintiffs' perspective, see ECF No. 52, pt. 2, ¶¶ 166-71.

[35] Defendants DeSimone and Pennelle agree that the Town did not have rules governing political signs at that time.  ECF No. 52, pt. 2, ¶ 194.  Furthermore, Defendant DeSimone testified that the Town also did not have a permitting process for political signs.  Id. ¶ 195.

[36] Plaintiffs contest the relevance of how many complaints were submitted because "the First Amendment is not subject to a popularity contest."  ECF No. 52, pt. 1, ¶ 56.

[37] Among those who complained was the wife of former Councilman Mark Rubio.  ECF No. 52, pt. 2, ¶ 148.

[38] Defendant DeSimone could not accurately recall the content of the sign—he thought it had something to do with a local athletic organization—but he did remember that the sign was not advertising a business.  ECF No. 52, pt. 2, ¶¶ 197-99.

[39] In other instances, Defendant DeSimone has notified landowners that signs on their property were not compliant with the Sign Law, and those property owners subsequently obtained the proper permit for their signs.  ECF No. 52, pt. 1, ¶ 62.  Plaintiffs argue that this is immaterial because the nature of those signs was never disclosed or recalled by Defendant DeSimone.  Id.

[40] Plaintiffs claim that this occurred on April 3, 2015, and that Defendant DeSimone directed Plaintiff Carminucci to comply immediately or interpose an objection to the violation, but the

Town did not require that Plaintiff Carminucci remove the sign, and Plaintiff Carminucci did not remove it.  See id. ECF No. 52, pt. 1, ¶ 61.  In response to the Notice of Violation, Plaintiff Carminucci sent Defendant Town a letter contending that Defendant Town could not regulate the sign.  ECF No. 52, pt. 1, ¶ 59.  The letter included the allegation that Defendant Town was "motivated to issue the [violation notice] in this matter based solely on the content/message of the sign."  Defs.' Ex. Z, at 2 (internal quotation marks omitted).  Furthermore, in the letter Plaintiff Carminucci requested violation records pertaining to two other commercial properties in the Town—located at 101 Saw Mill Road, Hawthorne, New York, and 50 Kensico Road, Thornwood, New York—that had also erected political signs which were not exhibited from within a building window.[41]  Id. at 1.

On May 21, 2015, Defendant DeSimone filed an Information which charged Plaintiff Tin Can Holdings, LLC with several violations of the Sign Law.  Pltfs.' Ex. 73, at 2.[42]  Defendant Town alleges that Plaintiffs' sign was in violation for several reasons: (1) the size of the sign, (2) the sign did not relate to a use located on the property absent the necessary special permit, and

---

cited material to support this assertion is instead dated April 3, 2012 and concerns a property maintenance violation.  ECF No. 52, pt. 2, ¶ 150 (citing Pltfs.' Ex. 69).

[41] The letter included photographs of the other political signs posted in the Town.  ECF No. 52, pt. 2, ¶ 153.  Plaintiffs later incorporated these same properties into the Complaint as comparator properties for Plaintiffs' selective enforcement claim.  ECF No. 1 ¶¶ 52-53.  According to the Town's Complaint Report, there is one sign complaint regarding a sandwich board sign registered to 101 Saw Mill Road dated November 12, 2010, and the matter is closed. Defs.' Ex. N, at 19.  There are no complaints in this Report registered to 50 Kensico Road.

[42] It appears that Plaintiffs filed an incomplete Exhibit 73 which is the Information filed against Plaintiff Tin Can Holdings, LLC for violations of the Sign Law.  In this four page exhibit, there is a cover sheet labeling the exhibit, and then three enumerated pages: 1, 3, and 4.  There is not an enumerated page 2.  Based on what appears on enumerated pages 1 and 3, enumerated page 2 should have included a reprint of §§ 176-8(B)(1)(a), 176-8(B)(1)(c), and 176-8(B)(3) of the Sign Law.  Neither party included the entirety of these regulations in their summary judgment motion papers, but Plaintiffs did later include them in a separate filing.  ECF No. 51, Ex. 3, at 4-5.

(3) the sign was about a temporary event and was not exhibited from inside a window area of the building.[43]  ECF No. 52, pt. 2, ¶¶ 159-61.

Plaintiff alleges that he went to court on this matter at least five times.  Id. ¶ 163.  On February 1, 2016, the Mount Pleasant Town Court denied Plaintiffs' motion to dismiss this case. Defs.' Ex. AA.  To Defendant DeSimone's knowledge, the ticket was never resolved, and no action was taken to dismiss the ticket.  ECF No. 52, pt. 2, ¶¶ 204-05.  Since this incident, Plaintiff Carminucci has continued to erect signs on the property—some are political in nature, and even of similar size to the sign relevant to this litigation—but he has not been ticketed. Defs.' Ex. H, at 287:24-296-23.

## II.  DISCUSSION

### A.  Standard for Summary Judgement

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material—for purposes of summary judgment—when it "might affect the outcome of the suit under the governing law…. Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citation omitted).  "The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any

---

[43] Defendant DeSimone claims to have believed that the sign could not be exhibited outside on the property.  ECF No. 52, pt. 2, ¶ 207.  Additionally, Defendant DeSimone testified that he knew that the shape and color requirements under § 176-4(B) did not apply to political signs.  Id. ¶ 209.

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.  A trial judge may, therefore, grant summary judgment only when "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." See id.

The movant bears the initial burden of "demonstrating the absence of a genuine issue of material fact." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).  If satisfied, the burden then shifts to the non-movant to present evidence establishing "that there is a genuine issue of material fact…." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986) (citing Fed. R. Civ. P. 56(e); First Nat'l Bank v. Cities Service Co., 390 U.S. 252, 288-89 (1968)).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted).

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586 (citation omitted). Moreover, a non-movant "may not rely on conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).  Instead, the non-movant must establish the existence of an issue of fact by showing that "there is sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citing First Nat'l Bank, 390 U.S. at 288-89).

Generally, the court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002) (citations omitted). The court must "resolve all ambiguities. . . in favor of the party against whom summary judgment is sought," Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008), so "[t]he nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (citations omitted). Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Id. (citation omitted).

Parties may support their respective versions of the material facts by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ., P. 56(c)(1).[44] Although a "court need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Summary judgment may be granted only "if after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (alterations in original) (quoting Celotex Corp. v.

---

[44] For directions on how the parties should file and respond to a motion for summary judgment in the United States District Court for the Southern District of New York, see Local Civ. R. 56.1.

Catrett, 477 U.S. 317, 323 (1986)).  If the party opposing summary judgment does not respond to the motion, then the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).  However, even when the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied <u>even if no opposing evidentiary matter is presented.</u>

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (emphasis in original) (citations omitted) (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)).

**B.  <u>Applicable Law and Analysis</u>**

1.  <u>First Amendment Retaliation</u>

Plaintiffs claim that Defendants "singled out and selectively prosecuted" Plaintiffs for building and zoning violations because Plaintiff Carminucci "has organized repeated challenges to the dominant political group which controls" the Town's government.  ECF No. 1 ¶¶ 29, 33, 35.[45]  Defendants move for summary judgment on the grounds that "the prosecution at issue was supported by probable cause," and that Defendant Town's enforcement actions against the property predates Plaintiff Carminucci's alleged political activity.  ECF No. 45, at 16.

---

[45] The Court finds that Plaintiffs' second cause of action is substantially similar to Plaintiffs' third cause of action.  <u>Compare</u> ECF No. 1 ¶¶ 28-36, <u>with</u> ECF No. 1 ¶¶ 37-43.  Therefore, the Court's First Amendment Retaliation analysis incorporates both Plaintiffs' second cause of action, and the relevant portions of Plaintiffs' third cause of action.

a.  Probable Cause

"The existence of probable cause will defeat … a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive…." Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).  This is because "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful attempt to deter or silence criticism of the government." Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992).  In short, "the existence of probable cause is a complete defense to a First Amendment retaliatory [issuance of summons] in this Circuit." Abujayyab v. City of New York, 15 Civ. 10080 (NRB), 2018 WL 3978122, at *11 (S.D.N.Y. Aug. 20, 2018) (citing Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)).  In the Second Circuit, probable cause is assessed under the "totality of the circumstances." Stansbury v. Wertman, 721 F.3d 84, 92-93 (2d Cir. 2013); see also United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004) ("Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested.").

In the prosecution at issue, the Town charged Plaintiff Tin Can Holdings, LLC with four Town Code violations.[46]  Defendants argue that Defendant Pennelle had probable cause to issue each violation, ECF No. 45, at 16, whereas Plaintiffs contend that Defendant Pennelle lacked probable cause in each instance.  ECF No. 50, at 13-14.

---

[46] See supra Part I.E (outlining the four Town Code violations).  Defendant Pennelle stated in the Information that he both observed these violations on the date of the site check and that "[s]ubsequent observations of the property reveal[ed] continuing illegal uses."  Defs.' Ex. Q, at 3.

i.   <u>Property Maintenance Violations</u>

Defendants charged Plaintiff Tin Can Holdings, LLC with violating several subsections of the Property Maintenance Law.  Defs.' Ex. Q, at 1-2.  In the Information, Defendant Pennelle stated that during the relevant site visit he observed "(1) [a] broken fence; (2) numerous abandoned vehicles; (3) overgrown brush, leaves and weeds; (4) abandoned storage containers; and (5) a boat and tarps."  <u>Id.</u> at 3.  Plaintiffs argue that Defendants lack probable cause on several fronts.

First, Plaintiffs argue that Defendants fail to "affirm where this fence was located or the extent of its disrepair sufficient to constitute probable cause."  ECF No. 50, 14.  Section 162-4(A)(3) ("the Fence Maintenance Requirement") of the Property Maintenance Law simply instructs that "[a]ll fences shall be maintained…."  Defs.' Ex. W, at 2.  It encompasses <u>all</u> fences, without qualifying where the fence is located on the property or describing the extent of disrepair necessary to mend a broken fence.  Defendant Pennelle's observation, however brief, is enough to establish probable cause in this instance because it explains that he observed a broken fence on Plaintiffs' property in violation of the Town Code.

Next, Plaintiffs present two related arguments: that Defendants provide no basis for the conclusion that Defendant Pennelle observed numerous "abandoned" vehicles and storage containers, and that observing a tarp and boat on the property do not qualify as a violation under the Property Maintenance Law.  ECF No. 50, 14.  Sections 162-4(A)(6) ("the Paving

Requirement"),[47]  162-4(A)(7) ("the Yard Maintenance Requirement"),[48]  and 162-4(A)(9) ("the

Litter Regulation")[49] of the Property Maintenance Law do not explicitly prohibit the collection of

abandoned chattel on private property, nor do they explicitly incorporate the terms "abandoned,"

"tarp," or "boat."  Defs.' Ex. W, at 2-3.  However, these ordinances do mandate that property be

"maintained [for] safe passage under normal use," "kept clean and free of physical hazards," and

do prohibit the "accumulation of … junk…."  Id.  Plaintiffs' argument focuses on the merits of

the zoning ordinance violation rather than the relevant issue before this Court.  For the limited

purpose of determining probable cause, it is germane that Defendant Pennelle conducted a site

check and observed a combination of chattel scattered on Plaintiffs' property that appeared to be

in violation of the Town Code.  Notably, Plaintiffs do not deny that the items were on the

property at the time of the site check, and Plaintiffs do not argue that these items were being used

---

[47] The Paving Requirement mandates that "[s]teps, walks, driveways, parking spaces and similar paved areas shall be maintained so as to afford safe passage under normal use and weather conditions. Any holes or other hazards that may exist shall be filled or necessary repairs or replacement carried out. All off-street parking facilities shall be swept at least monthly."  Defs.' Ex. W, at 2-3.

[48] The Yard Maintenance Requirement states that "[y]ards, courts and vacant lots shall be kept clean and free of physical hazards, rodent harborage and infestation. They shall be maintained in a manner that will prevent rubbish from being blown about the neighborhood. Open wells, cesspools or cisterns shall be securely closed or barricaded from access to the public." Defs.' Ex. W, at 3.

[49] The Litter Regulation prohibits the following behavior:

> No person shall deposit, throw or scatter or suffer, permit or allow the accumulation of any filth, dirt, ashes, junk, garbage, wastepaper, dust, rubbish, sticks, stones, grass, wood, leaves, paper or paper boxes, iron, tin, nails, bottles or glass of any kind, unregistered cars and parts thereof or cars without a current valid New York State motor vehicle inspection certificate, except currently registered out-of-state vehicles and except automobile dealers having a certificate of occupancy pursuant to § 218-62 of the Zoning Ordinance of the Town of Mount Pleasant, or any other kind of rubbish or waste material, upon any sidewalk, highway or public place or upon any vacant or improved lot, piece or parcel of ground abutting upon any sidewalk, highway or public place or upon any private property within the town.

Defs.' Ex. W, at 3.

in service of Plaintiffs' automotive repair business.  Based on the totality of circumstances, the Court finds that Defendant Pennelle's observations establish probable cause.

Finally, Plaintiffs argue that Defendants' allegation regarding overgrown brush, leaves and weeds is facially insufficient because it does not establish that this overgrowth was in public view.  ECF No. 50, 14.  On this issue, Plaintiffs have successfully identified a shortcoming in the Information.  Section 162-4(A)(4) ("the Overgrowth Regulation") of the Property Maintenance Law requires that "[a]ll landscaping shall be well maintained so that lawns, hedges, bushes and trees shall be kept trimmed and free from becoming overgrown and unsightly where exposed to public view and where the same may constitute a blighting factor thereby depreciating adjoining property."  Defs.' Ex. W, at 2.  Defendant Pennelle failed to explain whether he could observe the overgrowth from public view, and whether the overgrowth deprecated an adjoining property.

Therefore, the only property maintenance violation in which probable cause has not been established is the Overgrowth Regulation.  Plaintiffs' First Amendment retaliation claim survives this threshold issue as it pertains to the Overgrowth Regulation.  The Court grants Defendants' summary judgment motion on Plaintiffs' same claim as it pertains to the Fence Maintenance Requirement, the Paving Requirement, the Yard Maintenance Requirement, and the Litter Regulation.

ii.   Site Plan Violation

Defendant Pennelle charged Plaintiff Tin Can Holdings, LLC with operating an automotive repair garage without a special use permit under the Site Plan Requirement.[50]  Defs.'

---

[50] In the Order to Remedy, Defendant Pennelle advised Plaintiff Carminucci that Defendant Pennelle's observations of the property led him to believe that "a portion of the Property [was] operating as an illegal junk yard without site plan approval…."  Defs. Ex. P, at 1.  Defendant Pennelle changed this phrasing in the charging instrument to reflect a different violation:

Ex. Q, at 3.  Before the Court can consider probable cause in this instance, it must first settle whether the property already has a site plan, submitted in conjunction with a special use permit, pursuant to the Site Plan Requirement.

Plaintiffs argue that the property has a site plan on file with the Building Department. See ECF No. 1 ¶ 39; ECF No. 50, at 6.  Shortly after Plaintiff Carminucci purchased the property, he submitted a document labeled "site plan" to the Building Department as part of a building permit application.  See supra note 18 and accompanying text.  However, this document has no effect here because site plans must be submitted with a special use permit application to the ZBA rather than as part of a building permit application to the Building Department.  See Defs.' Exs. M, R.  Defendants correctly identify that the document in question has not been considered and approved by the Town as envisioned under the Site Plan Requirement, see ECF No. 45, at 11, and therefore the Court finds that the property does not have a site plan.

The Court now returns to the issue of probable cause.  Plaintiff Carminucci asserts that the Site Plan Requirement is inapposite to him because he "was not proposing development of anything on his site in June 2015…."  ECF No. 50, at 13.  Instead, Plaintiffs were operating an automotive repair garage that the parties agree is a legal, non-conforming use, see supra Part I.C, and therefore does not require a special use permit.  Plaintiffs argue that a reasonable person in Defendant Pennelle's position should have confirmed whether the property required a special use permit in order for the property owner to operate a repair garage.  Defendant Pennelle does not establish whether he investigated or confirmed the legal, non-conforming status of Plaintiffs'

---

"fail[ing] to obtain the necessary Site Plan Approvals to operate a repair garage…."  Defs.' Ex. Q, at 3.

property on Garrigan Avenue, and therefore probable cause has not been established in this

instance.

### iii.  Special Use Permit Violation

Defendant Pennelle charged Plaintiff Tin Can Holdings, LLC for "fail[ing] to obtain any

and all necessary Special Use Permits for the uses on the property," based on the Special Use

Permit Requirement.  Defs.' Ex. Q, at 3.  Plaintiffs argue that the Special Use Permit

Requirement does not apply to them because a special use permit is not required to operate their

grandfathered auto repair business.  ECF No. 50, at 13.  This argument is irrelevant in the

context of the Information, which accuses Plaintiff Tin Can Holdings, LLC of operating an

illegal junk yard on the property.[51]  Defs.' Ex. Q, at 3.  First, in operating a grandfathered repair

garage, Plaintiffs would not also be allowed to operate a junk yard.  Second, Plaintiffs would

have this Court rule in their favor because Plaintiffs were not openly and notoriously operating—

or planning to operate—a junk yard.  To require this threshold "insists on a formalism that defies

common sense, as well as the totality of the circumstances test for probable cause."  Norton v.

Town of Islip, 97 F. Supp. 3d 241, 258-59 (E.D.N.Y. 2015) (finding that there was probable

cause to issue a zoning violation for operating a rental unit without a license even though a fire

made the property uninhabitable).  During the site check, Defendant Pennelle observed several

items that he concluded were abandoned, along with a boat and several tarps.  Defs.' Ex. Q, at 3.

---

[51] As explained above, Defendant Pennelle initially advised Plaintiff Carminucci in the Order to Remedy that he was operating an illegal junk yard without site plan approval, but in the charging instrument Plaintiff Tin Can Holdings, LLC was cited with operating a repair garage without the necessary site approval.  See supra note 50.  In this instance, Defendant Pennelle made no such change from the Order to Remedy to the Information.  Compare Defs. Ex. P, at 1 ("[A] portion of the Property is operating as an illegal junk yard … without a special permit."), with Defs. Ex. Q, at 3 ("Defendant is illegally operating a junk yard on the property in violation of the Town … Code. … Defendant has … failed to obtain any and all necessary Special Use Permits for the uses on the property.").

In combination, Defendant Pennelle concluded that Plaintiffs were operating a junk yard on the property.  See id.  He later confirmed that Plaintiffs did not have the site plan approval necessary to operate a junk yard.  See id.  Plaintiffs only contest Defendant Pennelle's conclusion rather than the observations which are the basis for probable cause in this instance. Therefore, the Court finds that the totality of the circumstances establish that there was probable cause for Defendant Pennelle to issue this violation.

iv.   <u>Setback Law Violation</u>

Defendants charged Plaintiff Tin Can Holdings, LLC with illegally parking in the setback in violation of the Setback Law.  <u>See</u> Defs.' Ex. Q.  Before the Court can consider probable cause for this violation, it must first settle the parties' fundamental dispute regarding whether the property is grandfathered.

Defendants rely on a 2008 ruling from the Westchester County Supreme Court to argue that the property is not grandfathered, <u>see</u> ECF No. 45, at 12, whereas Plaintiffs maintain that the property is grandfathered because it predates the Town Code.  <u>See</u> ECF No. 50, at 5.

In 2008, the Westchester County Supreme Court held that that Plaintiffs did not have a grandfathered use with respect to parking or storing vehicles in the setback adjacent to Broadway.  Defs.' Ex. C, at 4.  The Supreme Court made no finding with respect to the setback adjacent to Garrigan Avenue.  In 2016, the Supreme Court was again asked to determine whether the property was subject to the Setback Law.  Pltfs.' Ex. 64.  The Supreme Court adopted its 2008 decision with respect to Broadway, and held that Plaintiffs retained a grandfathered use along the Garrigan Avenue setback.  <u>Id.</u> at 9-10; <u>see</u> <u>supra</u> note 19.  Thus, the property is grandfathered under the Town Code on Garrigan Avenue, but not on Broadway.

As to the probable cause determination for a violation of the Setback Law on the Broadway side, Plaintiffs contest the sufficiency of Defendant Pennelle's description of the violation.  Defendant Pennelle stated in the Information that he "observe[d] and continue[d] to observe motor vehicles illegally parked in the front yard setbacks on Broadway … in violation of the Town Code."  Defs.' Ex. Q, at 3.  Plaintiffs argue that this is insufficient to establish probable cause because Defendant Pennelle does not specifically state that the vehicles were parked on the property and within thirty feet of Broadway.  See ECF No. 50, at 13.  The Court finds this argument to be an unreasonable interpretation of the probable cause standard.  See Norton, 97 F. Supp. 3d at 258-59; supra Part II.B.1.a.iii.  Furthermore, Plaintiff Carminucci admitted that he continued to park vehicles in the setback on the Broadway side even after a court order instructed him not to do so.  See Defs.' Ex. H, at 537:14-538:16.  Based on the totality of the circumstances, the Court finds that Defendant Pennelle satisfied the probable cause standard as it relates to charging Plaintiffs with parking in the setback on Broadway.

Plaintiffs assert that Defendant Pennelle had no probable cause to issue a violation for parking on the Garrigan Avenue side of the property because Plaintiffs had a legal right to park in this setback.  ECF No. 50, at 13.  As noted above, Plaintiffs have a grandfathered use to park in the setback on Garrigan Avenue.  Even though Defendant Pennelle observed that vehicles were parked in the setback on Garrigan Avenue, Defs.' Ex. Q, at 3, a reasonable person in Defendant Pennelle's position should have confirmed that Plaintiffs did not have a right to park in this setback.  Defendant Pennelle does not establish whether or not he investigated or confirmed the grandfathered status of Plaintiffs' property on Garrigan Avenue, and therefore probable cause has not been established in this instance.

In summary, probable cause was not established with respect to the Overgrowth Regulation, the Site Plan Requirement, and the Setback Law with respect to Garrigan Avenue. The Court will address the merits of these claims further.  In all other respects, Defendants' motion for summary judgment for First Amendment Retaliation is granted.

b.   Merits of the First Amendment Retaliation Claim

The Court now considers Plaintiffs' First Amendment retaliation claim pertaining to those charges that survived a probable cause determination.  Those charges are violations of the Overgrowth Regulation, the Site Plan Requirement, and the Setback Law as it pertains to Garrigan Avenue.

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context."  Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  This distinction is based on whether the plaintiff is a prisoner, a public employee, or a private citizen.  See Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011).  As a private citizen suing public officials for retaliation under § 1983, Plaintiff Carminucci must demonstrate that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998)).

Defendants do not contest whether Plaintiff Carminucci's political activity is protected by the First Amendment, or whether Defendants' actions resulted in effectively chilling Plaintiff

Carminucci's speech.[52]  See ECF No. 45, at 16-18; Reply Mem. of Law in Supp. of Defs.' Mot.

for Summ. J., ECF No. 55, at 5-6.  Therefore, the Court focuses on whether there is a genuine

dispute as to any material fact concerning Defendants' motivation.

 To satisfy this burden, plaintiffs must rely on more than generalized allegations of

malice.  See Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001).  Specific proof of

improper motivation is required in order for plaintiff to survive summary judgment on a First

Amendment retaliation claim.  Curley, 268 F.3d at 73 (citing Blue v. Koren, 72 F.3d 1075, 1082-

83 (2d Cir. 1995)).  For example, plaintiffs may demonstrate improper motive through

"expressions by the officials involved regarding their state of mind, circumstances suggesting in

a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the

actions taken."  Blue, 72 F.3d at 1084.

 Defendants argue that "the conduct that Plaintiff has been prosecuted for is substantially

the same as it was in 2004, 2008, and 2011."  ECF No. 45, at 17.  Overall, Defendants allege that

they were motivated to issue the Information by Plaintiff Carminucci's "blatant disregard for the

Town Code, prior judicial decisions, and his own on-the-record promises, and the numerous

complaints about the property made by Plaintiff's next door neighbor."  ECF No. 45, at 18.

 Plaintiffs allege that Defendant Town's increased enforcement activity against Plaintiffs

"following [P]laintiff Carminucci's emergence as a major political opponent of the supervisor,

---

[52] "Various forms of harm have been accepted as satisfying this injury requirement in the context
of a claim that a public official has injured the plaintiff in retaliation of [his or] her exercise of
[his or] her First Amendment rights."  Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011).  In
the Second Circuit, "[a] plaintiff has standing if he [or she] can show *either* that his [or her]
speech has been adversely affected by the government retaliation or that he [or she] has suffered
some other concrete harm." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013)
(emphasis in original).  In this matter, Plaintiffs assert that Plaintiff Carminucci's business has
suffered substantial harm and "prevented him from selling his property to interested third parties
for millions of dollars."  ECF No. 1 ¶¶ 34-35.

town board and building department," demonstrates Defendants' retaliatory motive.  ECF No. 50, at 15.  Plaintiffs observe that the Information represents the first instance in which Plaintiffs were cited for operating without a valid site plan and a valid special use permit even though Defendant Town had cited Plaintiffs for repeated violations since 2004.  See id.  Additionally, Plaintiffs note that the Information addresses Plaintiffs' parking in the setback on Garrigan Avenue even though Plaintiffs have openly and notoriously engaged in this activity since as early as 2007.  See id.

Since Plaintiffs offer particularized—albeit circumstantial—evidence that conflicts with Defendants' evidence, there are disputed material facts that cannot be resolved by the Court on summary judgment.  See Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001) (finding that the plaintiff adequately alleged the defendant's retaliatory motive by proffering a statement made by the defendant which suggested the defendant's mental state at the time of the underlying incident); Mangino v. Incorporated Village of Patchogue, 739 F. Supp. 2d 205, 248 (E.D.N.Y. 2010) (finding that the plaintiffs put forth enough evidence to raise a triable issue of fact by asserting that the village threatened that the plaintiffs would be charged with additional violations unless the plaintiffs eased their constitutional challenge to the local rental permit law); Brink v. Muscente, No. 11 Civ. 4306, 2013 WL 5366371, *10 (S.D.N.Y. Sept. 25, 2013) (finding that there was a triable issue of fact because the parties disagreed on whether there was any discussion about the content of the plaintiff's signs that were subject to the underlying state action).

Therefore, Defendants' motion for summary judgment on Plaintiffs' First Amendment retaliation claim—as it pertains to the Overgrowth Regulation, the Site Plan Requirement, and the Setback Law on Garrigan Avenue—is denied.

c.   Qualified Immunity for Defendant Pennelle

Defendant Pennelle argues that he is entitled to qualified immunity with respect to

enforcement of the Setback Law because "the enforcement decisions he made were reasonable."

ECF No. 45, at 20.

"Qualified immunity protects government officials from liability for civil damages unless

a plaintiff demonstrates '(1) that the official violated a statutory or constitutional right, and (2)

that the right was clearly established at the time of the challenged conduct.' " Burns v

Martuscello, 890 F3d 77, 94 (2d Cir. 2018) (quoting McGowan v. United States, 825 F.3d 118,

124 (2d Cir. 2016)).  Generally, this doctrine is broad in scope because it protects "all but the

plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335,

341 (1986).  However, "[w]here a factual issue exists on the issue of motive or intent, a

defendant's motion for summary judgment on the basis of qualified immunity must fail."

Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003).  "Defendants bear the burden of

establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

Since there is a material dispute of facts regarding Defendant Pennelle's motive, see supra

Part II.B.1.b, Defendant Pennelle's qualified immunity defense fails.

2.   As Applied First Amendment Challenge[53]

---

[53] Plaintiffs have not clearly identified whether this challenge is to the constitutionality of the
statute itself, or whether it is an "as applied" challenge.  They have also not clearly identified
what standard the Court should apply to this claim, which might have allowed the Court to infer
Plaintiffs' intent in this regard.  Defendants have repeatedly referenced this as an "as applied"
claim, and Plaintiffs have not contested that assertion.  The Court therefore infers that Plaintiffs
intended this to be a challenge to the Sign Law as it was applied to Plaintiffs.

Furthermore, Defendants note that Plaintiffs' as applied First Amendment challenge would fail if
a different section of the Sign Law would independently prohibit the sign that Plaintiffs erected.
See ECF No. 50, at 22 (citing Lamar Advertising of Penn, LLC v. Pittman, 573 F. Supp. 2d 700,
708-10 (N.D.N.Y. 2008) (dismissing a First Amendment challenge to a municipal sign law on

In May 2015, Plaintiff Tin Can Holdings, LLC was cited for eight violations of the Sign Law.  Pltfs.' Ex. 73, at 2.  In the Complaint, Plaintiffs allege that "[i]n each of these regards, the [Sign Law] is patently unconstitutional and represents a prior restraint upon constitutionally protected speech and an imposition on free speech not justified by a compelling state interest." ECF No. 1 ¶ 62.  Defendants' motion for summary judgment on this claim argues that Plaintiff's' as applied First Amendment claim fails because the Sign Law is constitutional.  See ECF No. 45, at 21.

An as applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others.  See City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 803 & n.22 (1984).

In a First Amendment analysis, courts examine whether the challenged regulation is content based or content neutral because "the scope of protection for speech generally depends on whether the restriction is imposed because of the content of the speech."  Universal City Studios, Inc. v. Corley, 273 F.3d 429, 450 (2d Cir. 2001).  A regulation is content based when "a law applies to particular speech because of the topic discussed or the idea or message expressed."

---

the grounds that even if the challenged on-premises limitation were successful, the plaintiff's proposed sign would still have been prohibited by a maximum height restriction that the plaintiff did not challenge).  In this case, Plaintiffs do not challenge § 176-5(B) ("the Height Restriction") of the Sign Law which prohibits any signs from being constructed "higher than the maximum building height permitted in the applicable zoned district by the provisions of the … Zoning Ordinance."  ECF No. 51, Ex. 3, at 4.  In this case, Plaintiffs' property is located in an M-2 zone. See supra Part I.A.  Although the Court was provided excerpts of the Zoning Ordinance, see Defs.' Exs. M, R, none of these excerpts provide the maximum building height permitted in an M-2 zone.  Additionally, it is undisputed that the size of Plaintiffs' sign was approximately four feet by eight feet, and it was erected on the back of a flatbed truck which was parked on Plaintiffs' property.  See supra Part I.F.  Nevertheless, it remains a genuine dispute of material fact as to how high this sign stood at the time that Defendant Pennelle ticketed Plaintiff Tin Can Holdings, LLC.  Therefore, Defendants' argument fails in this regard.

Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015) (citations omitted).  "Content-based laws ...

are presumptively unconstitutional and may be justified only if the government proves that they

are narrowly tailored to serve compelling state interests."  Id. (citations omitted).  "By contrast,

laws that confer benefits or impose burdens on speech without reference to the ideas or views

expressed are in most instances content neutral."  Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622,

643 (1994) (citations omitted).  For content neutral regulations, the Court applies intermediate

scrutiny.  See id.  To survive intermediate scrutiny, the regulation must "further an important or

substantial governmental interest unrelated to the suppression of free speech, provided the

incidental restrictions [do] not burden substantially more speech than is necessary to further

those interests."  Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 186 (1997) (citation omitted).

> To determine whether a regulation is content based or content neutral, the court must

consider "whether the government has adopted a regulation of speech because of disagreement

with the message it conveys.... A regulation that serves purposes unrelated to the content of

expression is deemed neutral, even if it has an incidental effect on some speakers or messages

but not others."  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citation omitted).

"As a general rule, laws that by their terms distinguish favored speech from disfavored speech on

the basis of the ideas or views expressed are content based."  Turner Broad. Sys., Inc., 512 U.S.

at 643.  In other words, "[a]n ordinance is content-based when the content of the speech

determines whether the ordinance applies."  Sugarman v. Village of Chester, 192 F. Supp. 2d

282, 292 (S.D.N.Y. 2002).  By contrast, "government regulation of expressive activity is content

neutral so long as it is justified without reference to the content of the regulated speech."  Time

Warner Cable Inc. v. FCC, 729 F.3d 137, 155 (2d Cir. 2013) (internal quotation marks omitted).

"While signs are a form of expression protected by the Free Speech Clause … [i]t is common ground that governments may regulate the physical characteristics of signs...." through their police powers.  City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994).  However, "[a] statute regulating speech 'of private citizens on private property ... is presumptively impermissible....' " Sugarman v. Village of Chester, 192 F. Supp. 2d 282, 291 (S.D.N.Y. 2002) (quoting City of Ladue, 512 U.S. at 59 (O'Connor, J., concurring)).

Ultimately, First Amendment protections are broad but not absolute.  See Regan v. Boogertman, 984 F.2d 577, 579 (2d Cir.1993) (citing Elrod v. Burns, 427 U.S. 347, 360 (1976)). The Government may impose reasonable time, place, and manner restrictions on speech as long as the restrictions are content neutral, narrowly tailored to serve a significant government interest and leave open "ample channels for communication."  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

### a.   Special Permit Regulation

Plaintiffs allege that the Sign Law unconstitutionally required Plaintiffs to obtain a special permit from the ZBA before erecting any sign on their property not related to a use on the property.  ECF No. 1 ¶¶ 59, 62.  However, as Defendants point out, a permit requirement is a common, constitutional regulation so long as the permit requirement is content neutral.  See ECF No. 45, at 21 (citing Riel v. City of Bradford, No. 04-cv-90, 2005 U.S. Dist. LEXIS 18704, at *30 (W.D. Pa. Aug. 31, 2015)); see also Sugarman v. Village of Chester, 192 F. Supp. 2d 282, 293 (S.D.N.Y. 2002) (finding a permit regulation constitutional because it equally applied to temporary signs regardless of the message in the sign).

Section 176-5(A) ("the Special Permit Regulation"), a subsection of the Sign Law, states that "[n]o sign shall be erected which does not relate to a use located on the property unless a

special permit from the Zoning Board of Appeals is granted after a public hearing thereon." ECF No. 51, Ex. 3, at 2.  The Special Permit Regulation makes a distinction between on-premises and off-premises activity.  There is little guidance on this type of regulation.  See, e.g., Reed v. Town of Gilbert, 576 U.S. 155, 174-75 (2015) (Alito, J., concurring) (claiming that there are several types of content-neutral sign restrictions which would receive intermediate scrutiny, including a distinction between on-premises and off-premises activities).

In this matter, Plaintiffs own and operate an automotive repair business on their property. See supra Part I.A.  Defendant DeSimone cited Plaintiff Tin Can Holdings, LLC for violating the Special Permit Regulation after erecting a sign on the property about a political issue.  See supra Part I.F.  The display of this sign was violative under the language of the Special Permit Regulation, regardless of its content, because it did not relate to a use on the property.  The regulation does not discriminate as to the viewpoint expressed within the sign.  See Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994) (citations omitted).  Instead, the Special Permit Regulation simply has an incidental effect on Plaintiffs' desire to participate in discourse regarding the upcoming school budget vote.  See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citation omitted).  Thus, the Court determines that the Special Permit Regulation is content neutral.  The Court therefore applies intermediate scrutiny to address the question of whether the regulation furthers "an important or substantial governmental interest unrelated to the suppression of free speech, [and that] the incidental restrictions [do] not burden substantially more speech than is necessary to further those interests."  Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 186 (1997) (citation omitted).

In applying intermediate scrutiny, the Court looks to § 176-1 ("the Legislative Intent") of the Sign Law for Defendant Town's stated intent for drafting this regulation:

> The Town Board recognizes the necessity both to preserve the character of the town and to maintain the town's appearance at the highest level. The Board further recognizes that lack of propriety or inconsistencies in the design of signs would adversely affect the desirability of the immediate area as well as surrounding areas. Therefore, the purpose of this chapter is to control or otherwise regulate the installation, erection and maintenance of all signs defined below within the Town of Mount Pleasant.

ECF No. 51, Ex. 3 at 1.  In the Second Circuit, both aesthetics and property values have been demonstrated to qualify as substantial governmental interests unrelated to the suppression of free speech.  Marin v. Town of Southeast, 136 F. Supp. 3d 548, 568 (S.D.N.Y. 2015) (citing Sugarman v. Village of Chester, 192 F. Supp. 2d 282, 300 (S.D.N.Y. 2002)); see also City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 805 (1984) ("[I]t is well settled that the state may legitimately exercise its police powers to advance aesthetic values.").

Plaintiffs argue that even if this permit regulation furthers a substantial governmental interest unrelated to the content of the speech, the permit regulation "subjects political signs, which are rarely directly related to the use located on the property [to] an onerous burden…." ECF No. 50, at 19.  It is well established that a municipality may not, consistent with the First Amendment, permit commercial on-premises messages while prohibiting noncommercial on-premises messages.  See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 508-13 (1981). The Special Permit Regulation avoids this overbreadth as it applies to Plaintiffs in two ways: (1) by permitting the obtaining of a special permit prior to display through application to the ZBA, or (2) by existence of an exemption under § 176-8(B)(6) of the Sign Law, which allows commercial and industrial properties to erect a sign concerning temporary events, like school budget votes, subject to certain material, size, locational, and durational requirements.  ECF No. 51, Ex. 3, at 6.  Therefore, Plaintiffs could still erect a sign with their intended viewpoint without having to avail themselves of the permitting process.  See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

The Court concludes that the Special Permit Regulation is a reasonable time, place, and manner restriction, and is narrowly tailored to support Defendant Town's significant governmental interests in aesthetics and property values.  Thus, the Court grants Defendants' motion for summary judgment on Plaintiffs' as applied First Amendment challenge regarding the Special Permit Regulation.

### b.  Temporary Sign Exemption

Plaintiffs argue that the Sign Law is unconstitutional because it requires that temporary signs to be exhibited from a window area of a building.  ECF No. 1 ¶¶ 60, 62.  Defendants argue that municipal ordinances regulating where signs may be placed, even when distinguished between free-standing signs and those attached to buildings, are content neutral.  ECF No. 45, at 21 (citing Reed v. Town of Gilbert, 576 U.S. 155, 174-75 (2015) (Alito, J., concurring)).

Section 176-8(B) ("the Commercial and Industrial Property Ordinance") of the Sign Law regulates the location and size of signs in commercial and industrial districts.  ECF No. 51, Ex. 3, at 4.  Plaintiffs challenge here pertains to § 176-8(B)(6) ("the Temporary Sign Exemption"), a subsection of the Commercial and Industrial Property Ordinance.[54]  ECF No. 51, Ex. 3, at 6. The Temporary Sign Exemption states:

> Temporary signs announcing coming events, special sales, contests, civic activities or promotional activities, through the use of devices, banners and decals, etc., may be exhibited only if inside any window area of a building, provided that the aggregate area of such signs, posters or banners does not exceed 50% of the area of the window in which they are exhibited. Such signs shall be removed

---

[54] Plaintiffs argue that the Temporary Sign Exemption does not apply to them in this instance. ECF No. 50, at 20.  As explained above, the Temporary Sign Exemption exists within a section of the Sign Law that regulates signs on commercial and industrial properties.  Furthermore, the Temporary Sign Exemption defines temporary sign as "signs announcing coming events, special sales, contests, civic activities or promotional activities…."  ECF No. 51, Ex. 3, at 6.  It is undisputed that Plaintiffs erected a sign about an upcoming school budget vote on his commercial property without a permit.  See supra Part I.F.  The Court is unpersuaded that the Temporary Sign Exemption does not apply to Plaintiffs in this case.

within 48 hours after the end of such event, sale and civic activity, etc. Neither
Board approval nor a permit is required.

ECF No. 51, Ex. 3, at 6.

In this case, Plaintiffs erected a political sign, without a permit, that was not on display
from a window area of the building on their commercial property.  See supra Part I.F.  In
reviewing the Temporary Sign Exemption closely, all temporary signs are subject to the location
requirement.  To display any form of a temporary sign atop a flatbed truck on this property,
rather than from a window area of the building, was in violation of the Temporary Sign
Exemption.  The regulation does not discriminate as to Plaintiffs' message, see Turner Broad.
Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994) (citations omitted), but instead has an incidental
effect.  See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citation omitted).
Therefore, the Court determines that the Temporary Sign Exemption is content neutral.

In applying intermediate scrutiny, the Court again looks to the Legislative Intent—
aesthetics and property value—for drafting this regulation.  ECF No. 51, Ex. 3, at 1.  In the
Second Circuit, as noted above, aesthetics is considered a permissible reason to regulate the
placement of signs.  Long Island Bd. of Realtors, Inc. v. Incorporated Vill. of Massapequa, 277
F.3d 622, 628 (2d Cir. 2002) (citation omitted).  On this basis, Defendant Town has a substantial
interest in regulating the location of temporary signs to promote aesthetics.

Plaintiffs argue that the Temporary Sign Exemption is overbroad because it only permits
temporary signs to be displayed from inside any window area of a building.  ECF No. 50, at 18
("Nor can the Town constitutionally decide that a political sign may only be hung from a
building window.").  This misstates the Temporary Sign Exemption in the context of the whole
Sign Law.  As the Court explained above, temporary signs can be erected on commercial or
industrial properties either under the Special Permit Regulation or the Temporary Sign

38

Exemption.  See supra Part. II.B.2.a.  Political signs are not, as Plaintiffs suggest, limited to being placed in a windowed area of a building.  Thus, an ample channel of communication was available for Plaintiffs' viewpoint if Plaintiffs had abided by the Temporary Sign Exemption. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

The Court concludes that the Temporary Sign Exemption is a reasonable time, place, and manner restriction, and narrowly tailored to support Defendant Town's significant governmental interests in aesthetics.  Thus, the Court grants Defendants' motion for summary judgment on Plaintiffs' as applied First Amendment challenge regarding the Temporary Sign Exemption.

### c.  Remaining Claims

Plaintiffs allege that they were unconstitutionally required to obtain a permit from the Building Department before erecting a sign on their private property.  ECF No. 1 ¶¶ 57, 62.

Defendant DeSimone cited Plaintiff Tin Can Holdings, LLC for violating § 176-4(A) ("the Permit Ordinance") of the Sign Law which states that "[n]o sign shall be erected on any property unless a permit has first been obtained from the Building Department as may be required by the provisions of this chapter."  ECF No. 51, Ex. 3, at 1; Plfs.' Ex. 73, at 2. Defendant DeSimone also cited Plaintiff for four violations related to the Permit Ordinance, see Plfs.' Ex. 73, at 2, which Plaintiffs also challenge as unconstitutional.  ECF No. 1 ¶¶ 57-58, 61-62.  However, none of these regulations—including the Permit Ordinance—apply to Plaintiffs in this circumstance.

First, as explained earlier, the Commercial and Industrial Property Ordinance regulates the location and size of signs in commercial and industrial districts.  See supra Part II.B.2.b. Plaintiffs were cited for violating § 176-8(B)(1)(a) ("the Business Sign Regulation") of the Sign

Law which requires that a person seeking to display the following type of sign must obtain a

permit from the Building Department before such display:

> A single non-flashing sign <u>pertaining to a permitted use and located on the same</u> <u>lot</u>. Such sign shall not have a total sign area greater than one square foot for each linear foot of building frontage, and the aggregate area of all such signs erected or placed upon the building or located on the same lot shall not exceed one square foot in area for each linear foot of building frontage. The sign shall not extend beyond the top of any wall of a building on which displayed, shall not be displayed on a separate structure, shall not project into any required rear or side yard or into the street right-of-way more than six inches and shall not face any side or rear line of an adjoining lot in a residential district.

<u>Id.</u> (emphasis added).  The Business Sign Regulation does not apply here because, as the Court

explained in detail above, Plaintiffs' sign did not relate to a use on the property.  <u>See</u> <u>supra</u> Part

II.B.2.a.

Second, § 176-8(B)(1)(c) ("the Size Restriction") of the Sign Law provides that "[i]n no

case shall the aggregate area of any sign or signs permitted under [the Business Sign Regulation]

… exceed 50 square feet."  ECF No. 51, Ex. 3, at 4.  Since this ordinance is defined by its

relation to the Business Sign Regulation, the Size Restriction do not apply to Plaintiffs' sign.

Third, § 176-8(B)(3) ("the Gasoline Station Sign Regulation") of the Sign Law states that

> [g]asoline filling stations or service stations shall be permitted no more than two signs, one of which shall be attached to the front and the other to the side of the building. If located on a corner lot, in lieu of one of the signs a freestanding sign not exceeding 20 square feet carrying the logo of the gasoline or oil company may be allowed, upon application to the Zoning Board of Appeals for a special permit. These signs, exclusive of the freestanding sign, shall conform to the provisions set forth under [the Business Sign Regulation] … or [the Size Restriction]; provided, however, that the top of the sign shall not be higher than six feet above the roof of the building. Such signs shall conform in all other respects to the provisions of this chapter and shall be erected only after a permit has been obtained from the Building Department, provided that, if such signs are proposed for a new gasoline filling or service station, they shall be installed only after a permit is obtained from the Zoning Board of Appeals.

<u>Id.</u> (emphasis added).  Plaintiffs own and operate an automotive repair garage.  <u>See</u> <u>supra</u> Part

I.A.  Although a commercial gas station once existed on the property prior to Plaintiff

Carminucci's ownership, that use was discontinued and all that remains is a gas pump for personal use.  See supra Part I.C.; see also supra note 19 and accompanying text (explaining that the Westchester County Supreme Court previously found in a separate matter that the predecessors-in-title had effectively abandoned the use of the commercial gas station on the property).  Therefore, since Plaintiffs do not operate a gas station on the property, the Gasoline Station Sign Regulation do not apply to Plaintiffs' sign.

Next, the Court returns to the Permit Ordinance.  Since Plaintiffs were cited for this violation in relation to their alleged violations of the Business Sign Regulation and the Gasoline Station Sign Regulation, there is no independent basis for the Permit Ordinance to apply to Plaintiffs' sign.

Finally, § 176-4(B) ("the Advisory Board Requirement"), mandates that

> [a]ny sign shall conform to a specific color and shape as determined by the Advisory Board on Architecture and Community Appearance. The applicant shall, upon applying for a permit, submit a rendering of the sign to the Advisory Board on Architecture and Community Appearance, which shall include the size, shape, materials used and color scheme of the sign.

Id. (emphasis added).  The Sign Law has two separate permit-related requirements: the Special Permit Regulation, see supra Part II.B.2.a, and the Permit Ordinance.  There are two reasons that the Court finds that the Advisory Board Requirement relates to the Permit Ordinance rather than the Special Permit Regulation.  First, the Advisory Board Requirement specifically uses the term "permit" and not "special use permit" to describe who needs to submit an application to the Advisory Board on Architecture and Community Appearance.  Second, the Advisory Board Requirement exists within the same subsection of the Sign Law as the Permit Ordinance, whereas the Special Permit Regulation exists within a different subsection.  Thus, because the Court finds that the Advisory Board Requirement relates to those mandated to seek a permit under the Permit Ordinance, the Advisory Board Requirement does not apply to Plaintiffs' sign.

41

Based on undisputed facts presented to the Court, these regulations do not factually apply to the circumstances in this case.  No charges should have ever been brought against Plaintiff Tin Can Holdings, LLC on these regulations.  Nevertheless, this Court does not have jurisdiction to dismiss these charges.  If Plaintiffs had alleged a First Amendment retaliation claim on the basis of these charges it may have been viable; no such claim has been pressed.  Instead, Plaintiffs' as applied First Amendment challenge on these regulations is not viable because the underlying charges are without a factual basis.  Thus, the Court grants Defendants' summary judgment motion as it relates to the Permit Ordinance, Business Sign Regulation, Size Restriction, Gasoline Station Sign Regulation, and Advisory Board Requirement.

### 3.   Equal Protection Clause Violation

Plaintiffs also claim that Defendant Town has selectively enforced Town Code the Overgrowth Regulation, the Site Plan Requirement, the Special Use Permit Requirement, the Setback Law as well as the Sign Law against them in violation of the Equal Protection Clause. See ECF No. 1 ¶¶ 13, 27, 38-40, 42-43, 63.  Defendants move for summary judgment on the grounds that the comparator properties are not similarly situated to the property, and that Plaintiffs have failed to establish that the Town acted for an improper reason.  Mem. of Law in Supp. of Defs.' Mot. for Summ. J., ECF No. 45, at 11, 14, 21.

The Equal Protection Clause fundamentally requires that "all persons similarly circumstanced shall be treated alike."  F.S. Royster Guano Co. v. Commonwealth of Virginia, 253 U.S. 412, 562 (1920).  An Equal Protection violation based upon selective enforcement requires that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith

intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement." LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999).

To satisfy the first LeClair prong, "plaintiffs must plausibly allege facts showing a 'reasonably close resemblance' between themselves and a proffered comparator." Hsin v. City of New York, 779 Fed. Appx. 12, 15 (2d Cir. 2019) (quoting Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000)). In the Second Circuit, courts have found that "[s]imilarly situated does not mean identical, but rather a 'reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' to the extent that an 'objectively identifiable basis for comparability' exists." Walker v. City of New York, No. 05-CV-1283, 2010 WL 5186779, at *7 (E.D.N.Y. Dec. 15, 2010) (quoting Graham, 230 F.3d at 39). It is not necessary that the plaintiff demonstrate an exact correlation between him- or herself and the comparator. Abel v. Morabito, No. 04 Civ. 07284(PGG), 2009 WL 321007, at *5 (S.D.N.Y. Feb. 10, 2009). Instead, the "plaintiff must identify comparators whom a 'prudent person would think … [were] roughly equivalent.' " Id. (alteration in original) (quoting Estate of Morris v. Dapolito, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004)). A factual issue—such as whether two entities are similarly situated—is usually left up to a jury, "[b]ut this rule is not absolute and 'a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.' " Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790-91 (2d Cir. 2007) (citation omitted) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d 2001)).

Plaintiffs must also show that they were treated differently from their comparators because differential treatment is "the sine qua non of a LeClair selective enforcement violation."

Doe v. Village of Mamaroneck, 462 F. Supp. 2d 520, 555 (S.D.N.Y. 2006).  In the land use context, this often requires plaintiffs to demonstrate "the municipality's knowledge of the other, unenforced violations."  Christian v. Town of Riga, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) (citing LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999)).

On the second LeClair prong, "[w]hen a plaintiff's equal protection claims are based on alleged First Amendment violations, the former 'coalesce [ ] with the latter.' "  Gentile v Nulty, 769 F Supp 2d 573, 582 (S.D.N.Y. 2011) (quoting Kempkes v. Downey, 07–CV–1298, 2008 WL 852765, at *6 (S.D.N.Y. Mar. 31, 2008)).  The Second Circuit has held that where a selective enforcement claim is found to "coalesce" with a legally insufficient First Amendment claim, the Equal Protection claim must also fail as a matter of law.  See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003) (citing African Trade & Info. Cent. v. Abromaitis, 294 F.3d 355, 363 (2d Cir. 2002)).

For the reasons detailed below, Defendants' motion for summary judgment regarding Plaintiffs' Equal Protection claims is granted in part and denied in part.

a.  Setback Violation

On the first LeClair prong, Plaintiffs claim that Defendants selectively enforced the Setback Law against the property compared to the comparator properties.  ECF No. 1 ¶¶ 15-17.  Defendants argue that the comparator properties "are distinguishable because they all have either an approved site plan submitted in conjunction with a special use permit or are grandfathered under the Town Code."  ECF No. 45, at 11.  As this Court did with Plaintiffs' First Amendment Retaliation claim, see supra Part II.B.1.a.iv, the Court bifurcates its analysis on Broadway and Garrigan Avenue due to the distinguishing characteristics of the different sections of the property.

Defendants sought to enforce the Setback Law on the Garrigan Avenue side of the property even though this section of the property was grandfathered.  <u>See</u> Defs.' Ex. Q.  Plaintiffs submit one property—Diggins Mechanical, the business operating at 578 Commerce Street—that Defendant DeSimone's affidavit affirms is a grandfathered property and has not been subject to enforcement.  <u>See</u> ECF No. 1 ¶ 15(g); Defs.' Ex. L ¶¶ 13, 16.  Since Plaintiffs' property on the Garrigan Avenue side is grandfathered, and therefore exempt from the Setback Law, it never should have been subject to enforcement.[55]  Nevertheless, a distinction exists between how Defendant Town treated Plaintiffs compared to the owners of Diggins Mechanical.  Therefore, Plaintiffs' claim survives Defendants' instant motion on the first <u>LeClair</u> prong as it pertains to Garrigan Avenue.

In connection with the Broadway side of the property, the parties disagree about whether Plaintiffs submitted any similarly situated properties for comparison. Plaintiffs allege that there are eight comparator properties similarly situated to the property on Broadway.  <u>See</u> ECF No. 1, ¶ 15(a)-(f), (i).  By contrast, Defendant DeSimone's affidavit suggests that these comparator properties are not similarly situated because they either were not subject to the Setback Law or had a ZBA-approved site plan that permitted parking in the setback.  <u>See</u> Defs.' Ex. L ¶¶ 7-12, 14-16.  Plaintiffs argue that Defendants never presented any evidence to support this assertion during discovery, nor were Plaintiffs able to obtain this information through a FOIL request.  <u>See</u> ECF No. 50, at 5; <u>see also</u> <u>supra</u> note 32 and accompanying text (outlining this discovery dispute

---

[55] Defendants present several additional arguments, ECF No. 45, at 12-14, that this similarity alone does not satisfy the first <u>LeClair</u> prong, but Defendants do not persuade the Court for three reasons.  First, each of these arguments assumes that the property is not grandfathered, and therefore subject to enforcement of the Setback Law.  Second, these arguments do not rely on this Court's precedent.  Finally, Defendants ask the Court to compare the magnitude and scope of Plaintiffs' violations to the comparator properties, which this Court leaves for the factfinder.

in greater detail).  Because the Court must resolve all ambiguities at this stage in favor of the nonmovant, <u>Holcomb v. Iona College</u>, 521 F.3d 130, 137 (2d Cir. 2008), the Court leaves this issue to be determined by the factfinder.  Thus, Plaintiffs' claim survives Defendants' summary judgment motion on the first <u>LeClair</u> prong as it pertains to Broadway.

On the second <u>LeClair</u> prong, Plaintiffs claim that Defendants enforced the Setback Law to punish Plaintiff Carminucci for his political activity.[56]  ECF No. 50, at 11.  Once again, <u>see supra</u> Part II.B.1.a.iv, the Court bifurcates its analysis between the Broadway side of the property and the Garrigan Avenue side.

Plaintiffs' First Amendment retaliation claim with regard to the Broadway side of the property has already been found to be subject to summary judgment in Defendants' favor, <u>id.</u>, thus the Court must also grant summary judgment on the related Equal Protection claim since the claims coalesce.  <u>See Cobb</u>, 363 F.3d at 110.  The same is not true with regard to the property abutting Garrigan Avenue, as the Court denied summary judgment on Plaintiffs' First Amendment retaliation claim, because Defendants failed to establish probable cause and there remains a genuine dispute as to Defendants' motivation.  <u>See supra</u> Part II.B.1.b.  Therefore, the Court is not required to find in favor of Defendants' motion on this issue.

Instead, the Court considers the merits of Defendants' motion under the second <u>LeClair</u> prong as it pertains to the property on the Garrigan Avenue side.  Defendants' main argument[57] is

---

[56] Plaintiffs' Complaint initially advanced the theory that Defendants engaged in "arbitrary and capricious selective enforcement," but this was later clarified in Plaintiffs' opposition brief opposing the instant motion.  <u>Compare</u> ECF No. 1 ¶ 27, <u>with</u> ECF No. 50, at 10-11.

[57] Defendants present several other arguments on this issue, including longstanding enforcement action against Plaintiffs for similar action, and Plaintiffs' unwillingness to abide by previous court rulings on this matter, <u>see</u> ECF No. 45, at 14-15; ECF No. 55, at 2-4, but none of these arguments address the underlying issue of Defendants' authority to enforce the Setback Law against a grandfathered property.

that Plaintiffs fail to show evidence of an improper motive.  Defendants contend that its

enforcement action began as a response to Mr. Arrichiello's complaint about the property.  ECF

No. 45, 14.  Additionally, Defendants reason that if Defendant Pennelle was motivated by an

impermissible reason, then Defendant Pennelle "would not have given Plaintiff notice of the

violations … and afforded [Plaintiff] the opportunity to remedy them prior to issuing the

summons."  Id. at 15.  However, as the Court earlier summarized, the property on Garrigan

Avenue is grandfathered from the Setback Law.  See supra Part II.B.1.a.iv.  Despite Plaintiffs'

admission to parking vehicles in the setback on Garrigan Avenue, see Defs.' Ex. H, at 537:14-

538:16, Defendants never had the authority to enforce the Setback Law against this portion of the

property.  Thus, Defendants have not stated a motivation for citing Plaintiff Tin Can Holdings,

LLC for violating the Setback Law on Garrigan Avenue when such enforcement was not legally

supportable, so there remains an open question of fact as to Defendant Pennelle's motivation.

Therefore, this Court grants Defendants' motion for summary judgment on Plaintiffs'

Equal Protection claim regarding enforcement of the setback provision as it pertains to Plaintiffs'

property on Broadway, but denies the same motion as it pertains to Plaintiffs' property on

Garrigan Avenue.

b.  Site Plan Approval and Special Use Permit Violations

Plaintiffs claim that Defendant Pennelle selectively cited Plaintiff Tin Can Holdings,

LLC for violating Town Code the Site Plan Requirement and the Special Use Permit

Requirement.  See ECF No. 1 ¶¶ 38-40, 42-43.  Defendants note that Plaintiffs never identified

similarly situated properties as it pertains to this claim.  See ECF No. 55, at 7.

At the outset, the Court must grant Defendants' summary judgment motion as it pertains

to the Special Use Permit Requirement because the legally insufficient First Amendment claim

must coalesce with the selective enforcement claim.  See Cobb, 363 F.3d at 110; supra Part
II.B.1.a.iii.

For the Site Plan Requirement, even though Plaintiffs' Complaint identified comparator
properties,[58] Plaintiffs identified these properties in relation to the selective enforcement claim
concerning the Setback Law.  ECF No. 1 ¶ 15.  In each instance, Plaintiffs describe the status of
cars parked in the setback for the comparator properties but do not allege anything pertaining to
site plans.  See id.  As explained above, Plaintiffs did not need a site plan to operate a repair
garage since doing so was already a legal, non-conforming use.  See supra Part II.B.1.a.ii.
Although Defendants never had the authority to enforce the Site Plan Requirement against this
portion of the property, Plaintiffs never proffered any comparator properties, which would be
necessary for a selective enforcement claim.  See LaTrieste Restaurant v. Village of Port
Chester, 188 F.3d 65, 70 (2d Cir. 1999).  Therefore, due to the absence of evidence on the first
LeClair prong, Defendants' motion for summary judgment is granted on the Plaintiffs' selective
enforcement claim regarding the Site Plan Requirement.

### c.  Property Maintenance Violations

Plaintiffs claim that Defendant Pennelle selectively cited Plaintiff Tin Can Holdings,
LLC for violating the Property Maintenance Law.  See ECF No. 1 ¶¶ 38-40, 42-43.  Despite
Defendants' extensive argument in support of other portions of its motion, Defendants failed to
address this claim.  At best, arguendo, Defendants' motion incorporates this claim through
Defendants' assertion that Plaintiffs' third cause of action should be dismissed.  ECF 45, at 18.
As this Court explained above, the Second Circuit has held that selective enforcement claims

---

[58] Plaintiffs' incorporate the comparator properties from the selective enforcement claim
regarding the Setback Law as part of Plaintiffs' claim in this instance.  ECF No. 1 ¶ 37.

which "coalesce" with a legally insufficient First Amendment claim must also fail as a matter of law.  See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003) (citation omitted).  Therefore, this Court has no choice but to grant Defendants' motion for summary judgment on Plaintiffs' selective enforcement claim as it pertains to the Fence Maintenance Requirement, the Paving Requirement, the Yard Maintenance Requirement, and the Litter Regulation, for which summary judgment has already been granted.  See supra Part II.B.1.a.i.

As to the remaining Property Maintenance Law claim, the Overgrowth Regulation, even though Plaintiffs likely fail to satisfy the first LeClair prong because Plaintiffs did not identify comparator properties for this claim, it is Defendants' burden to present this argument to the Court.  Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) (citation omitted).  Therefore, the Court denies Defendants' motion for summary judgment on the Overgrowth Regulation.

### d.  The Sign Law

Plaintiffs allege that Defendant Town selectively enforced the Sign Law against Plaintiffs.  ECF No. 1 ¶ 63.   By contrast, Defendants argue that the Sign Law was not selectively enforced against Plaintiffs.  ECF No. 45, at 22.  Once again, the Court follows the Second Circuit's directive that selective enforcement claims which "coalesce" with a legally insufficient First Amendment claim must also fail as a matter of law.  See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003) (citation omitted).  The Court granted Defendants' summary judgment motion on Plaintiffs' First Amendment challenge to the Sign Law, see Part II.B, therefore the Court must also grant Defendants' summary judgment motion for this claim.

III.    **CONCLUSION**

Accordingly, the Court finds that there remain issues of material fact for a trial.  Based on the foregoing, Defendant's motion for summary judgment is **granted in part and denied in part**.

The Court grants Defendants' summary judgment motion on Plaintiffs' First Amendment retaliation claim regarding the Fence Maintenance Requirement, the Paving Requirement, the Yard Maintenance Requirement, the Litter Regulation, and the Special Use Permit Requirement, but denies the same motion as it pertains to the Overgrowth Regulation, the Site Plan Requirement, and the Setback Law on Garrigan Avenue.

Next, the Court grants Defendants' summary judgment motion on Plaintiffs' as applied First Amendment challenge to the Sign Law.

Finally, the Court grants Defendants' motion for summary judgment on Plaintiffs' selective enforcement claim as it pertains the Setback Law regarding Plaintiffs' property on Broadway, Special Use Permit Requirement, the Site Plan Requirement, the Fence Maintenance Requirement, the Paving Requirement, the Yard Maintenance Requirement, the Litter Regulation, and the Sign Law.  The Court denies Defendants' same motion as it pertains to Plaintiffs' property on Garrigan Avenue and the Overgrowth Regulation.

The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 44.

Dated:  August 14, 2020
        White Plains, New York

                                        **SO ORDERED**,

                                        _Lisa Margaret Smith_
                        _____                          ___
                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York